UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SOUTHFIELD EDUCATION ASSOCIATION,
JOSIE BUSBEE, JACKIE DUNLAP,
RONDA ELLIS, NEDESTA NWABUEZE,
RENETTA WASHINGTON, and
TRACY ARMSTRONG,

                Plaintiffs,                      Case Number 17-11259
                                                      Honorable David M. Lawson

v.

BOARD OF EDUCATION OF THE
SOUTHFIELD PUBLIC SCHOOLS,
and SOUTHFIELD PUBLIC SCHOOLS,

                Defendants.
_____/

## <u>OPINION AND ORDER GRANTING IN PART AND<br>DENYING IN PART MOTIONS TO DISMISS</u>

In 2011, the State of Michigan amended its Revised School Code. One of the revised sections addressed hiring and retaining "effective teachers," and established criteria for rating teachers' effectiveness. Those criteria are to be used in making personnel decisions involving program reductions, eliminating positions, and recalling laid-off teachers; and they displaced seniority as a predominant factor governing those decisions. The plaintiffs — tenured Southfield school teachers and their union — contend that the teachers have a property right in their effectiveness ratings once they are assigned, and they allege that the defendants failed to base staffing decisions that followed recent school consolidations on those ratings. That procedural departure, they say, contravened their rights under the Due Process Clause, and they have filed a complaint seeking damages. There is a state remedy for a school district's failure to use the effectiveness ratings in making personnel decisions, but it is limited to reinstatement and explicitly

bars an award of back pay and other damages. The plaintiffs contend that the statute is unconstitutional.

The district and the school board have moved to dismiss the complaint, arguing that the teachers have no property right to continued employment, the post-deprivation procedures are adequate and so is the remedy, and the statute is constitutional. And they contend that they have been through all this before in earlier lawsuits, which ended in their favor, and which preclude this case. The state attorney general intervened to defend the state statute and filed a motion to dismiss as well, echoing some of the same arguments. The Court heard oral argument on November 21, 2017. The plaintiffs have stated a viable claim under the Due Process Clause. Their facial challenge to the constitutionality of the state statute is barred by claim preclusion, but not their as applied challenge. The Court will grant the motions in part and deny them in part.

I.

The facts of the case are taken from the corrected amended complaint and the public record.

In 2016, the Southfield, Michigan school district consolidated its two high schools into one and closed a kindergarten-through-eighth-grade school. Predictably, the school closures resulted in a reduction of its teacher workforce. To staff the newly-formed consolidated high school, the school district required its existing high school teachers to interview for the teaching positions at the new school.

These events occurred against the backdrop of the 2011 amendments to Michigan's Revised School Code. Historically, tenured teachers in Michigan — those certified teachers who successfully completed a probationary period — enjoyed a right to "be employed continuously" by their school board, unless discharged for cause. Mich. Comp. Laws § 38.91(1) (1996). And if

teachers were laid off because of a staff reduction, they were entitled, based on length of service, to "'be appointed to the first vacancy in the school district for which he is certified and qualified.'" *Tomiak v. Hamtramck Sch. Dist.*, 426 Mich. 678, 688, 397 N.W.2d 770, 774 (1986) (quoting Mich. Comp. Laws § 38.105(1) (1996), repealed by Pub. Act 101 (2011)).

The 2011 legislative amendments eliminated the right to recall found in the Teacher Tenure Act and instituted a merit-based system of evaluating teachers that displaced seniority as the predominant factor in making school staffing decisions. *See Baumgartner v. Perry Pub. Sch.*, 309 Mich. App. 507, 526-27, 872 N.W.2d 837, 847-48 (2015). The legislation required school districts to adopt "a rigorous, transparent, and fair performance evaluation system" applied "at least annually," that rated teachers on the following scale: "highly effective, effective, minimally effective, and ineffective." Mich. Comp. Laws § 380.1249(1)(a), (c). These ratings are to be based on a host of weighted factors, including "student growth and assessment data" (25% for the years in question); teacher performance measured by an "evaluation tool" that factors in "evidence of student growth," a teacher's "demonstrated pedagogical skills," classroom management skills, and attendance and discipline records; classroom observation; and lesson plan review. Mich. Comp. Laws § 380.1249(2)(a)(i), (iv), (e) (citing Mich. Comp. Laws § 380.1248(1)(b)(i)-(iii)). And the ratings, which are intended to ensure retention of "effective teachers," are to be used by school districts in making "all personnel decisions" including layoffs, reductions in force, recalls, and hiring after force reductions. Mich. Comp. Laws § 380.1248(1)(b). Seniority was relegated to a distant tie-breaking factor. Mich. Comp. Laws § 380.1248(1)(c).

The plaintiffs in this case include Josie Busbee, Jackie Dunlap, Ronda Ellis, Nedesta Nwabueze, Renetta Washington, and Tracy Armstrong. They allege that they were employed by

Southfield Schools as certificated tenured teachers, who had earned their status as effective teachers. Their union, the Southfield Education Association (SEA), also is a plaintiff and brings this suit on behalf of other teachers who were indefinitely laid off in June 2016 as a result of school consolidations.

In 2016, the defendants consolidated Southfield High School and Southfield Lathrup High School into a single high school, which resulted in a reduction in personnel, including the elimination of certain teaching positions held by teachers represented by SEA. The new school, located on the Southfield Lathrup High School premises, was renamed the Southfield High School for the Arts and Technology, and one other school, Brace Lederle, also was closed. As part of the consolidation process, Southfield required teachers to interview for open positions at the new school. Although the Southfield School Board adopted a policy that purportedly implemented the 2011 Revised School Code Amendments regarding staff reductions and recalls (Policy 3131), the plaintiffs allege that teachers were given a score based on the interviews, and those who earned sufficiently high scores were retained as teachers. The remaining teachers, including the named plaintiffs and other similarly situated teachers, were laid off.

The plaintiffs maintain that in determining which teachers were to be retained or laid off, Southfield did not comply with the above-mentioned statutory requirements or its own policies. It did not consider the effectiveness of those teachers as measured by their performance evaluations under section 1249, nor did it consider any or all of the enumerated factors in section 1248 and its policy. The named plaintiffs and other similarly situated members of SEA were not given any notice or opportunity to challenge Southfield's actions before termination. And the defendants did not

continue to pay them or postpone their layoffs until after some post-termination review, which was not made available to the plaintiffs in any event.

The plaintiffs filed their two-count complaint in April of last year alleging the violation of their rights to procedural due process under 42 U.S.C. § 1983, and a violation of Michigan Compiled Laws § 380.1248. The plaintiffs also contended that the remedial portion of section 1248, which limits relief to reinstatement and bars recovery of compensatory damages, is unconstitutional. In July 2017, the state attorney general moved to intervene to defend the statute's constitutionality. The defendants and intervening defendant then filed their respective motions to dismiss.

## II.

The motions to dismiss have been brought under Federal Rule of Civil Procedure 12(b)(6). The standards under that rule are well known to the parties: the purpose of the motion is to allow a defendant to test whether, as a matter of law, the plaintiffs are entitled to legal relief if all the factual allegations in the complaint are taken as true. *Rippy ex rel. Rippy v. Hattaway*, 270 F.3d 416, 419 (6th Cir. 2001) (citing *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993)). The complaint is viewed in the light most favorable to the plaintiffs, the factual allegations in the complaint are accepted as true, and all reasonable inferences are drawn in favor of the plaintiffs. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). To survive the motion, the plaintiffs "must plead 'enough factual matter' that, when taken as true, 'state[s] a claim to relief that is plausible on its face.' *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007). Plausibility requires showing more than the 'sheer possibility' of relief but less than a 'probab[le]' entitlement to relief. *Ashcroft v. Iqbal*, [556 U.S. 662, 678] (2009)." *Fabian v. Fulmer Helmets, Inc.*, 628 F.3d 278, 280 (6th Cir. 2010).

When deciding a motion under Rule 12(b)(6), the Court looks only to the pleadings, *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008), the documents attached to them, *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007) (citing Fed. R. Civ. P. 10(c)), documents referenced in the pleadings that are "integral to the claims," *id.* at 335-36, documents that are not mentioned specifically but which govern the plaintiff's rights and are necessarily incorporated by reference, *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997), *abrogated on other grounds by Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002), and matters of public record, *Northville Downs v. Granholm*, 622 F.3d 579, 586 (6th Cir. 2010). However, beyond that, assessment of the facial sufficiency of the complaint ordinarily must be undertaken without resort to matters outside the pleadings. *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010).

A.

1.

The defendants (including the intervening defendant) first attack the plaintiff's due process claim, arguing that the teachers have no property interest in continued employment or a right to recall protected by the Fourteenth Amendment.

Claims under 42 U.S.C. § 1983 require a showing that a person acting under color of state law deprived the plaintiff of a right "secured by the Constitution or laws of the United States." *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006)). Here, the plaintiffs source that right in the Due Process Clause of the Fourteenth Amendment.

In order to establish a procedural due process violation, the plaintiff must show that (1) it has a life, liberty, or property interest protected by the Constitution; (2) it was deprived of that interest by a state actor; and (3) it was not afforded timely and adequate process under law. *Waeschle v. Dragovic*, 576 F.3d 539, 544 (6th Cir. 2009). "Property interests are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006) (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972) (internal quotation marks omitted)). A "person clearly must have more than an abstract need or desire for [a certain benefit]. He must have more than a unilateral expectation of it. He must have a legitimate claim of entitlement to it." *Roth*, 408 U.S. at 577.

Federal courts have recognized that public employees may have a property interest in continued employment under certain circumstances and must be afforded due process before being discharged. *See, e.g., Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985); *Relford v. Lexington-Fayette Urban Cty. Gov't*, 390 F.3d 452, 460 (6th Cir. 2004) ("Under state law, government and civil service employees may have a property right in their continued employment."). Public employees with a property interest in their jobs generally must have a hearing before termination and afterward. *Pucci v. Nineteenth Dist. Ct.*, 628 F.3d 752, 766-67 (6th Cir. 2010) ("'For a public employee with a property interest in continued employment, due process includes a pre-termination opportunity to respond, coupled with post-termination administrative procedures.'") (quoting *Silberstein v. City of Dayton*, 440 F.3d 306, 315 (6th Cir. 2006)).

The defendants insist, however, that the 2011 Revised School Code amendments, and the state courts' gloss on that legislation, have eliminated any right that tenured teachers had to recall or continued employment in the face of a legitimate reduction in force. And they are correct, as far as that argument takes them.

In *Southfield Educaton Association v. Board of Education of Southfield Public Schools*, 320 Mich. App. 353, --- N.W.2d ---, 2017 WL 2960671 (2017), the union brought an action on behalf of tenured technology teacher Velma Smith, who was laid off when her position was eliminated after the 2013-2014 school year. Smith had been rated "highly effective" in her position during the 2012-2013 and 2013-2014 school years but not in earlier years. A part-time position was posted in the summer of 2014 for which Smith applied, but the district hired an outside candidate instead. She alleged in her complaint that the school district violated Michigan Compiled Laws § 380.1248 when it disregarded her "highly effective" rating and hired an unrated outside person, and it violated her procedural due process rights to retain her tenured teaching position. The court of appeals held that the school district was obliged under section 1248 to base recalls and new hires on the effectiveness ratings after a program reduction. 2017 WL 2960671, at *6. But the posted part-time position was for a job different than Smith's earlier position in which she achieved her "highly effective" rating. And the court held that the ratings are "position specific," which meant that "Smith simply could not claim an effectiveness rating related to the available position, and the school district was therefore not required to consider whether she would be relatively more or less effective than any other candidate for the position." *Ibid.*

As for Smith's due process claim, the court held that "Smith has no due process right to recall." *Id.* at *9. The court reasoned that although the Teacher Tenure Act protects teachers from

discharge without cause, a right to which due process protections attach, that protection never extended to layoffs, *id.* at *10 (citing *Chester v. Harper Woods Sch. Dist.*, 87 Mich. App. 235, 243-44, 273 N.W.2d 916, 919 (1978)), and no longer extends to recalls after the 2011 amendments. Therefore "the right of continuous employment for tenured teachers simply does not apply in this case." *Id.* at *9. And the court confirmed that "no process is due a tenured teacher who is laid off unless the reduction in force is not bona fide." *Id.* at *10.

The defendants contend that the decision in that case should end the matter, because the plaintiffs cannot claim a property right in continued employment or in a right to recall. They contend that the plaintiff in Smith grounded her property interest in her effectiveness status, but that misrepresents the court's characterization of the claimed property right. *See id.* at *9 (describing Smith's claim as to "her vested property right to continuous employment"). The defendants also state that because there is considerable discretion afforded to school boards in rating teachers under the present rating system, a teacher cannot claim a right to a rating.

It is true that there is no right for a teacher to be recalled after a layoff, as such. Nor is there a right to a specific effectiveness rating, inasmuch as the rating decisions, although guided by specific statutory criteria, necessarily are based on at least some subjective judgment. *See Richardson v. Twp. of Brady*, 218 F.3d 508, 517 (6th Cir. 2000) (holding that an individual "can have no legitimate claim of entitlement to a discretionary decision").

The plaintiffs contend, however, that once they have earned an effectiveness rating, it becomes a property interest that is protectable, and when the defendants disregarded that status without advance notice and made hiring decisions based on the interviews alone, the plaintiffs were deprived of their property without due process. They liken that action to being denied a promotion

when entitled to a rank on an eligibility list, which courts have found actionable. *See Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1236-37 (6th Cir. 1991) (recognizing that "[m]utually explicit understandings arising from an employer's custom and practice are one source of property interests," and holding that the plaintiff had a due process interest in promotion based on his rank in an eligibility list); *see also Carter v. City of Philadelphia*, 989 F.2d 117, 122 (3d Cir. 1993) (recognizing a property interest in hiring preferences established by the state's Veterans' Preference Act, and holding that the plaintiff's right to have that preference applied in the hiring and promotional process for the city police department "is to be afforded constitutional protection" under the Due Process Clause).

The Court agrees. The 2011 amendments to the Revised School Code place heavy — nearly exclusive — emphasis on teacher effectiveness when hiring decisions are to be made. All of the school districts' staffing decisions must be "based on retaining effective teachers." Mich. Comp. Laws § 380.1248(1)(b). And "[e]ffectiveness shall be measured by the [statutory] performance evaluation system." *Ibid.* As noted earlier, much goes into evaluating teachers and assigning ratings under this system. An effectiveness rating is something that must be earned and conferred, much the same as a veteran's preference status and a rank on a promotion eligibility list. Once a teacher earns a rating, the school district ought not to deprive the teacher of its benefits by disregarding it when making staffing decisions, changing the hiring rules contrary to the Revised School Code, without prior notice and an opportunity to be heard. The effectiveness rating, once earned, is a property interest entitled to protection under the Due Process Clause.

The defendants also argue that even if the plaintiffs have a protected property interest, their claim fails because section 1248(3) provides an adequate post-deprivation remedy. That section states that a teacher can sue to enforce the policy mandate of using teacher effectiveness to make staffing decisions, but "the teacher's sole and exclusive remedy shall be an order of reinstatement commencing 30 days after a decision by a court of competent jurisdiction." Mich. Comp. Laws § 380.1248(3)). And the teacher's recovery "shall not include lost wages, lost benefits, or any other economic damages." *Ibid.* The defendants believe there can be no procedural due process violation if a post-deprivation procedure exists to reinstate the plaintiffs where the defendants have not complied with sections 1248 and 1249. They also argue that the Michigan Legislature intended this remedy to be exclusive.

This Court rejected a very similar argument in *Mitchell through Mitchell v. Community Mental Health of Central Michigan*, 243 F. Supp. 3d 822, 839 (E.D. Mich. 2017). There, the State defendants insisted "the administrative appeal process furnished all the process the plaintiffs were due, and therefore no deprivation can be shown." *Ibid.* Like the defendants here, the State defendants relied primarily on *Jefferson v. Jefferson City Public School System*, 360 F.3d 583 (6th Cir. 2004). In that case, the Sixth Circuit held that "[i]f satisfactory state procedures are provided in a procedural due process case, then no constitutional deprivation has occurred despite the injury." *Id.* at 587-88. This Court found the defendants' reliance misplaced, explaining,

> *Jefferson* is based on *Parratt v. Taylor*, 451 U.S. 527 (1981), in which the Supreme Court considered a claim by a prisoner against a prison official under section 1983 for negligently losing his mail-order hobby materials. *Id.* at 529. The Court held that no due process violation occurred, even though the prisoner was deprived of property by a state actor, because "the deprivation did not occur as a result of some established state procedure." *Id.* at 529. When the deprivation occurs because of a

state actor's negligence, pre-deprivation procedures (or the lack of them) are irrelevant, and a due process violation cannot be established if the post-deprivation procedures are adequate. That is because "[a] negligent loss of property 'is not a result of some established state procedure and the State cannot predict precisely when the loss will occur.'" *Mitchell v. Fankhauser*, 375 F.3d 477, 481 (6th Cir. 2004) (quoting *Parratt*, 451 U.S. at 543).

Here, however, the plaintiffs allege, unlike in *Jefferson*, that the State's established procedure failed to satisfy the requirement of furnishing proper and understandable notice. They have not alleged that the faulty notice was the result of negligence or a rogue bureaucrat. Unless the plaintiffs were deprived of a property interest as the result of "a random or unauthorized act," the plaintiffs are required "'neither to plead nor prove the inadequacy of post-termination state-law remedies in order to prevail.'" *Mitchell*, 375 F.3d at 484 (quoting *Moore v. Bd. of Educ. of Johnson City Sch.*, 134 F.3d 781, 785 (6th Cir. 1998)). The plaintiffs are not required to plead the inadequacy of state-law post-deprivation remedies in order to state a claim.

*Mitchell*, 243 F. Supp. 3d at 839.

So it is here. The plaintiffs have alleged that Southfield's established procedure of hiring based on interview scores failed to comply with statutory requirements and disregarded their status as effective teachers. They do not allege that the lack of compliance was the result of negligence; instead they claim that their deprivation was caused by the school district's systematic disregard of state law and the district's own policy. Therefore, the adequacy of the remedy available under section 1248(3) has no bearing on whether the plaintiffs plausibly stated a procedural due process claim. Moreover, they contend that the statutory remedy is inadequate because it deprives them of back pay forever. *See Loudermill*, 470 U.S. at 550 ("[I]t is in no respect certain that a prompt postdeprivation hearing will make the employee economically whole again, and the wrongfully discharged employee will almost inevitably suffer irreparable injury. Even if reinstatement is forthcoming, the same might not be true of back-pay . . . and the delay in receipt of wages would thereby be transformed into a permanent deprivation.").

The plaintiffs adequately have pleaded a procedural due process claim.

B.

The defendants also argue that previous court decisions preclude the plaintiffs' claims in this case. Those decisions adjudicated challenges brought by the Southfield teachers' union to layoffs and non-recalls arising from the elimination of positions that preceded the 2016 school closings that spawned this litigation. The defendants contend that the judgments in those case — discussed below — bar the present lawsuit under the doctrine of *res judicata*.

That doctrine embraces two separate concepts — claim preclusion and issue preclusion. "Claim preclusion, or true res judicata, refers to [the] effect of a prior judgment in foreclosing a subsequent claim that has never been litigated, because of a determination that it should have been advanced in an earlier action. Issue preclusion, [also called collateral estoppel,] on the other hand, refers to the foreclosure of an issue previously litigated." *Mitchell v. Chapman*, 343 F.3d 811, 819 n.5 (6th Cir. 2003). The defendants here rely on claim preclusion, not issue preclusion.

"The res judicata effect of a state-court judgment in federal court is governed by the Full Faith and Credit Act, 28 U.S.C. § 1738." *Young v. Township of Green Oak*, 471 F.3d 674, 680 (6th Cir. 2006) (citing *Smith, Hinchman & Grylls, Assocs. Inc. v. Tassic*, 990 F.2d 256, 257 (6th Cir. 1993) (concluding that the Full Faith and Credit Act requires a "federal court to look to state court law of res judicata")). That statute generally requires "federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so." *Haring v. Prosise*, 462 U.S. 306, 313 (1983) (quoting *Allen v. McCurry*, 449 U.S. 90, 96 (1980)); *see also Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984) ("It is now settled that a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered.").

-13-

The Full Faith and Credit Act, then, requires reference to Michigan's laws of claim preclusion and issue preclusion (although the Michigan Supreme Court "generally uses the terms 'res judicata' and 'collateral estoppel' rather than the phrases 'claim preclusion' and 'issue preclusion.'" *J.A.M. Corp. v. AARO Disposal*, Inc., 461 Mich. 161, 168 n.7, 600 N.W.2d 617, 620 n.7 (1999)). Under Michigan claim preclusion law, "[a] second action is barred when (1) the first action was decided on the merits, (2) the matter contested in the second action was or could have been resolved in the first, and (3) both actions involve the same parties or their privies." *Dart v. Dart*, 460 Mich. 573, 586, 597 N.W.2d 82, 88 (1999); *see also Smith*, 990 F.2d at 257-58; *Adair v. State*, 470 Mich. 105, 121, 680 N.W.2d 386, 396 (2004)). "If the three elements are established, then res judicata serves to bar 'every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not.'" *Young*, 471 F.3d at 680 (quoting *Adair*, 470 Mich. at 121, 680 N.W.2d at 396).

The Michigan Supreme Court has adopted a "transactional approach" when assessing the second element. *Adair*, 470 Mich. at 124, 680 N.W.2d at 398. Under this approach, a "claim is viewed in factual terms and considered coterminous with the transaction, regardless of the number of substantive theories, or variant forms of relief flowing from those theories, that may be available to the plaintiff . . . and regardless of the variations in the evidence needed to support the theories or rights." *Ibid.* (quotation marks omitted) (citing *River Park, Inc. v. Highland Park*, 184 Ill.2d 290, 703 N.E.2d 883 (1998)). Courts are to consider "whether the facts are related in time, space, origin or motivation, and whether they form a convenient trial unit." *Ibid.* (quoting 46 Am. Jur. 2d, Judgments 533, p. 801). "Courts employing the transactional test have generally acknowledged that a new action will be permitted only where it raises *new and independent* claims, not part of the

previous transaction based on the new facts." *McCoy v. Michigan*, 369 F. App'x 646, 650 (6th Cir. 2010) (internal quotation marks and citations omitted).

The Sixth Circuit has added that an opportunity to amend the complaint in the earlier proceeding does not foreclose a new claim under this element. *See Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 530 (6th Cir. 2006) (rejecting the argument that *res judicata* bars a claim because a plaintiff could have amended her complaint to include alleged wrongdoing that occurred after the original pleading was filed).

The third element requires an identity of parties. But a party may be in privity with a party from an earlier case, even though absent from that case, when "the first litigant represents the same legal right that the later litigant is trying to assert." *Adair*, 470 Mich. at 122, 680 N.W.2d at 396 (citing *Baraga Co. v. State Tax Comm.*, 466 Mich. 264, 269–270, 645 N.W.2d 13 (2002)). There must be a "substantial identity of interest"; and a relationship that ensures that "the interests of the nonparty are presented and protected by the party in the litigation." *Ibid.* (citations omitted).

The defendants rely on three earlier cases in which the Southfield teachers' union, either by itself or with individually named plaintiffs, alleged the defendants violated sections 380.1248 and .1249 in laying off tenured teachers. The first case, *Southfield Education Association, Daniel Deegan, et al. v. Southfield Board of Education*, Case No. 12-124611 (Oakland Cty. Cir. Ct.) (*Southfield I*) was brought in Oakland County Circuit Court in 2012. The second case, *Southfield Education Association v. Southfield Board of Education*, Case No. 12-11030 (E.D. Mich.) (*Southfield II*) was brought in this district in 2012. And the third case *Southfield Education Association and Velma Smith v. Southfield Board of Education*, Case No. 15-146751 (Oakland Cty. Cir. Ct.) (*Southfield III*) was brought in Oakland County Circuit Court in 2015.

On January 31, 2012, SEA and several named plaintiffs filed a complaint in Oakland County Circuit Court that alleged Southfield violated the Public Employee Relations Act and Article I of the Michigan Constitution when it laid off the plaintiffs after the 2010-2011 school year and elected not to recall these tenured teachers to fill vacant positions. On April 5, 2012, they filed their first amended complaint, alleging a claim for breach of contract and that Southfield violated due process guaranteed by Article I of the Michigan Constitution. The plaintiffs argued Southfield's policy for conducting layoffs and recalls became a contract between Southfield and those teachers. The plaintiffs also claimed they had a property interest in their positions that could not be taken away without due process, and that the defendant violated its own recall standards implemented pursuant to section 1248(1) when it hired external candidates.

On June 6, 2012, the state trial judge granted "summary disposition" in favor of the defendants, concluding the plaintiffs offered no authority to support a claim of breach of contract based on the defendant's failure to follow a statutorily mandated policy, and that any relief for a procedural violation of section 1248 must be sought under section 1248(3)'s limited cause of action. The court acknowledged that the plaintiffs may have had a valid claim under section 1248(3) to challenge the recall decision and granted them an opportunity to amend their pleadings. On June 13, 2012, the plaintiffs filed a second amended complaint that eliminated references to due process.

*Southfield II*

On March 7, 2012, the union filed a separate complaint in this Court against the school district while *Southfield I* was pending in state court. No individually named plaintiffs were party

-16-

to this action. The complaint alleged the union members had a property right in continued employment and that the school district deprived them of procedural due process in violation of the Fourteenth Amendment based on the same set of facts set forth in *Southfield I*. The union sought a declaration that its members were deprived of procedural due process and that the 2011 Amendments to the Revised School Code are unconstitutional as they pertain to tenured teachers who can be displaced by probationary teachers.

On April 9, 2013, the Court entered an order granting the defendant's motion to dismiss based on *res judicata*. In addressing the three elements required for claim preclusion, the court found 1) the state court action was decided on the merits; 2) the operative facts of the instant claim were identical to the state court action and the union had full opportunity to litigate this claim but failed to do so; and 3) the parties to both actions were the same. The Court concluded that under Michigan's broad approach to *res judicata*, the plaintiff's federal constitutional claim could have been resolved in the state court action, noting that the federal and state claims are essentially identical. *Southfield Educ. Ass'n v. Southfield Bd. of Educ.*, No. 12-11030, 2013 WL 1432524, at *4 (E.D. Mich. Apr. 9, 2013). Citing *Migra v. Warren City School District Board of Education*, 465 U.S. 75 (1984), the Court concluded the union's claim was precluded by the earlier state court action where it could have raised its section 1983 claim. *Ibid.*

The Sixth Circuit affirmed dismissal. The court agreed with the district court's conclusion that "if state court decisions have preclusive effect on § 1983 claims that were not raised in a previous state court action, then Plaintiff's federal due process claim is likewise precluded by the state court decision finding that Defendant was entitled to judgment as a matter of law on Plaintiff's state due process claim." 570 F. App'x 485, 490 (6th Cir. 2014).

-17-

On April 25, 2015, the SEA and Velma Smith filed a five-count complaint against Southfield in Oakland County Circuit Court. The facts of the case are summarized earlier in this opinion. The plaintiffs alleged Southfield violated the Revised School Code and Smith's due process rights when it did not take into account her status as a "highly effective" teacher in failing to recall her to employment. In addition to three counts of statutory violations, the complaint alleged a violation of procedural due process under both the United States Constitution and Michigan Constitution. The complaint alleged Smith had a vested property right in retaining her teaching position unless her employment was terminated in compliance with due process.

On August 18, 2015, the state trial court summarily dismissed four counts of the plaintiffs' complaint, including the claim for procedural due process. On appeal, the plaintiffs argued, among other issues, that the limited remedy of reinstatement with no back-pay under section 1248(3) is tantamount to an unlawful taking and that the statute should be invalidated. The plaintiffs believed that if the court of appeals concluded sections 1248 and 1249 were in fact violated, Smith would be left with an unconstitutional remedy. On July 11, 2017, the Michigan Court of Appeals affirmed the lower court's decisions, but did not address the constitutional challenge the plaintiffs raised in their briefing. As to the due process claim, the court concluded "no process is due to a tenured teacher who is laid off unless the reduction in force is not bona fide." *Southfield III*, 320 Mich. App. 353, 2017 WL 2960671, at *10.

The defendants believe these prior cases bar the plaintiffs' constitutional challenge to section 1248(3) because the three elements of claim preclusion are satisfied. The plaintiffs argue section 1248(3) is unconstitutional on its face because it can never fully restore the rights of those who have

been unlawfully deprived of their property. That argument likely will never be reached in this case, though. It is based on the Due Process Clause. But if the plaintiffs succeed on their claim that the school district's rehiring procedures deprived them of their property interests in their effectiveness ratings, which also is based on the Due Process Clause, they will be able to recover their damages under section 1983, which they say section 1248(3) would take from them. The Court would not have to address section 1248(3)'s constitutionality. And if the plaintiffs do not succeed with that argument, they would be left with a reinstatement remedy under section 1248(3), which may be inadequate to them, but it would not violate any federal constitutional provision absent a protected property interest.

Nonetheless, the defendants argue that because the court gave the plaintiffs an opportunity to amend their complaint in *Southfield I*, they could and should have presented their constitutional challenge. However, the Sixth Circuit has made clear that an opportunity in an earlier case to amend the complaint to include other claims does not automatically bar those claims from being brought in a later case. *Rawe*, 462 F.3d at 530. The defendants have a stronger argument for claim preclusion based on *Southfield II* and *III*, because constitutional challenges to section 1248 were raised in some way in those cases.

Following Michigan's claim preclusion jurisprudence, most notably as articulated in *Adair*, it is apparent that the Southfield teachers and their union could have mounted a facial challenge to section 1248(3) in any of the previous lawsuits. "[T]he facts [in those cases] are related in time, space, origin or motivation, and . . . they form a convenient trial unit." *Adair*, 470 Mich. at 124, 680 N.W.2d at 398. The challenged provision of section 1248 certainly was in effect when *Southfield I - III* were pending. The complaints in those cases were filed after and in response to the 2011

-19-

Revised School Code amendments, which included section 1248(3). In *Southfield II*, the plaintiff sought a declaration that the amendments were unconstitutional, and in *Southfield III*, the plaintiffs argued on appeal that the relief afforded under section 1248(3) amounted to an unlawful taking. As the Court in *Adair* noted, as pleaded, there is no indication that the plaintiff union, with due diligence, could not have asserted a facial challenge to section 1248(3) during the pendency of *Southfield II* or *III*.

But that is only half the story. The 2016 scool consolidations and resulting layoffs had not occurred while *Southfield I - III* were pending. And so the defendants have not established that the as applied challenge is similarly foreclosed. Such was the case in *Whole Women's Health v. Hellerstadt*, --- U.S. ---, 136 S. Ct. 2292 (2016), where the Supreme Court concluded the petitioners' constitutional challenges to certain provisions of a Texas abortion statute were not barred by claim preclusion even though the petitioners previously had sought facial invalidation of one of those provisions in an earlier suit. In the first lawsuit (*Abbott*), the Fifth Circuit upheld the provision, and the plaintiffs in that case did not seek *certiorari*. *Id.* at 2301. The petitioners in *Hellerstadt*— a group of abortion providers, many of whom were plaintiffs in the earlier suit — sought an injunction prohibiting the enforcement of an admitting-privileges provision as applied to physicians at two abortion facilities and a surgical-center provision anywhere in Texas. *Ibid.* The Court affirmed the Fifth Circuit's position that the petitioners' constitutional claims were not the "very same claim" as the claim presented in *Abbott*. *Id.* at 2305. Then, citing the Second Restatement of Judgments, the Court explained that "development of new material facts can mean that a new case and an otherwise similar previous case do not present the same claim." *Ibid.* "The *Abbott* court itself recognized that 'later as-applied challenges can always deal with subsequent, concrete constitutional issues.'" *Id.*

at 2306.  Noting the changed circumstances since the first suit, the Court held that the doctrine of claim preclusion does not prevent the petitioners "from seeking review of new claims that have arisen after *Abbott* was decided."  *Id.* at 2307.

Similarly, the plaintiffs' as applied challenge in this case does not present the "very same claim" as in *Southfield I-III* because it involves the development of new material facts, namely an entirely new set of layoffs that occurred after those cases.  Consider *McCoy v. Michigan*, 369 F. App'x 646, 651 (6th Cir. 2010).  There, the Sixth Circuit concluded the plaintiff's claim was not barred by *res judicata* because the claims in the instant case involved a "wholly distinct transaction from that involved in the state-court litigation."  McCoy sought relief related to his termination from the Department of Corrections in 2004, while the state-court case involved incidents from 1999 until 2001.  *Ibid.*  The court found it was of no consequence that both cases involved claims of discrimination and retaliation because "neither resulted from nor are they tied to the same MDOC actions."  *Ibid.* "Although Michigan employs a broad view of res judicata, we do not believe that the preclusion of claims that could have been resolved in the previous litigation necessarily includes new and independent claims that arise after the original pleading in the first suit has been filed."  *Ibid.*

Here, the plaintiffs' as applied challenge to section 1248(3) is not barred by claim preclusion because it involves a "wholly distinct transaction" from the incidents involved in *Southfield I-III*.  The claims in this case stem from layoffs that resulted from school consolidations in 2016.  In *Southfield I* and *II*, the plaintiffs' claims arose out of terminations following the 2010-2011 school year, and in *Southfield III*, the plaintiffs' claims arose out of Smith's termination at the end of the 2013-2014 school year.  The claims in this case necessarily arose after the events in *Southfield I-III*

and thus the complaint alleges a new and independent constitutional claim based on new facts. *McCoy*, 369 F. App'x at 653.

Although the plaintiffs' facial challenge to section 1248(3) is barred by claim preclusion, their as applied challenge is not.

C.

Lastly, the defendants urge the Court not to exercise supplemental jurisdiction over the plaintiffs' alternate claim brought under section 1248(3). Their argument is premised on 28 U.S.C. § 1367(c), and their hope that the Court would dismiss the federal claims in Count I of the corrected amended complaint.

Under 28 U.S.C. § 1367(c), the district court may decline to exercise supplemental jurisdiction over state law claims under certain circumstances. That statute generally is invoked when the state law claims are brought in this Court as pendant to federal question claims, which have been dismissed. *See Weeks v. Portage County Executive Offices*, 235 F.3d 275, 280 (6th Cir. 2000) (observing that section 1367(c) "permit[s] the district court to decline to exercise supplemental jurisdiction when that court has dismissed all of the claims over which it has original jurisdiction"). Because the Court will not dismiss Count I of the corrected amended complaint in its entirety, the basis for federal jurisdiction remains, and supplemental jurisdiction over Count II is appropriate.

III.

The plaintiffs have pleaded a viable claim in Count I of the corrected amended complaint for deprivation of property in violation of the Due Process Clause. Their facial challenge to the

constitutionality of Michigan Compiled Laws § 380.1248(3) is barred by claim preclusion, but their

as applied challenge may proceed, as may their alternate state law claim.

Accordingly, it is **ORDERED** that the motions to dismiss by the defendants and intervening

defendant [dkt. #29, 30] are **GRANTED IN PART AND DENIED IN PART**.

It is further **ORDERED** that the facial challenge to the constitutionality of Michigan

Compiled Laws § 380.1248(3) in Count I of the corrected amended complaint is **DISMISSED**

**WITH PREJUDICE**.  The motions are **DENIED** in all other respects.

Because this motion remained pending during a substantial part of the discovery period

established by the case management order, the Court will amend that order to enlarge that period

and related case management deadlines.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   March 27, 2018

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served
upon each attorney or party of record herein by electronic means or first
class U.S. mail on March 27, 2018.

s/Susan Pinkowski
SUSAN PINKOWSKI